IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | * Criminal No. **PJM 00-424-2** |
| **ROBERT HENRY DAVIS,** | * |
| Defendant. | * |

## MEMORANDUM OPINION

On June 28, 2001, a jury found Robert Henry Davis guilty for his role in a scheme to transport cocaine and cocaine base from Miami, Florida to the Maryland suburbs of Washington, D.C. ECF No. 321. He was convicted of one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and cocaine base in violation of 21 U.S.C. § 846 and one count of possession with intent to distribute five kilograms or more of cocaine and cocaine base in violation of 21 U.S.C. § 841. *See* ECF No. 392. Due in part to two prior felony convictions, the Court sentenced Davis to the mandatory minimum term of imprisonment, which was life in prison. *Id.* The court of appeals affirmed the conviction and sentence. *See* ECF No. 457; *United States v. Davis*, 67 Fed Appx. 771 (4th Cir. 2003).

Davis is presently in the custody of the United States Bureau of Prisons, assigned to Federal Correctional Complex Coleman in Coleman, Florida. He is now 79 years old, is in poor health, and requires chronic medical care.

On March 4, 2019, Davis filed a pro se motion seeking compassionate release pursuant to the amended 18 U.S.C. § 3582(c)(1)(A)(i) based upon his age, physical condition, and time served. ECF No. 730. On October 28, 2019, the Office of the Federal Public Defender filed a Memorandum in Support of his Motion for Compassionate Release. ECF No. 736. On February

1

21, 2020, the Government informed the Court that it does not oppose the Motion. ECF No. 744. For the reasons that follow, Davis's Motion for Compassionate Release is **GRANTED**.

I.

Davis seeks release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Until recently, courts were unable to entertain compassionate release requests of a defendant except upon motion by the Director of the Bureau of Prisons. *See, e.g., United States v. Fletcher*, 2014 WL 12824234 (D. Md. Apr. 14, 2014). However, the 2018 First Step Act, among other things, amended § 3582(c) so as to allow courts to consider compassionate release motions filed directly by a defendant if he or she has first requested the Director to bring such a motion on his or her behalf and the Director either fails or refuses to do so. *See* Pub. L. No. 115-391, 132 Stat. 5194; *see also United States v. Webster*, 2020 WL 618828 *1 (E.D. Va. Feb. 10, 2020); *United States v. Beck*, 2019 WL 2716505 *5 (M.D.N.C. Jun. 28, 2019).

As of today, if a defendant has exhausted his administrative remedies, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that… extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Pursuant to 28 U.S.C. § 994(t), the Sentencing Commission defined "extraordinary and compelling reasons" as including when a defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[1] The defendant must also not present "a danger to the safety of any other person or to the community, as provided in 18

---

[1] Courts are split on whether this policy applies post-First Step Act. *See United States v. Webster*, 2020 WL 618828 *4 (E.D. Va. Feb. 10, 2020). Regardless of the effect of the policy, the Court finds its criteria instructive in evaluating Davis's Motion. Other courts have concluded the same. *See, e.g., United States v. Ebbers*, 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020).

2

U.S.C. § 3142(g)" and the reduction must be otherwise consistent with U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13.

II.

Davis has exhausted his administrative remedies with the Bureau of Prisons. In August 2013 he submitted a request for non-medical compassionate release. Following denial by the prison warden, Davis sought review at the regional level. In April 2014, the Bureau of Prisons' regional director affirmed the denial. ECF No. 736-5. On July 18, 2017, Davis, with the assistance of counsel, submitted a new request for compassionate release. ECF No. 736-6. On August 17, 2017 the Bureau of Prisons' Acting Assistant Director and General Counsel also denied the request. ECF No. 736-7. In doing so, the General Counsel agreed that Davis "meets the criteria" for compassionate release pursuant to the U.S.S.G. policy, but nonetheless denied the request, stating that "his release at this time would minimize the severity of his offense and pose a risk to the community."[2] *Id.* On November 9, 2017, Davis, through counsel, sought reconsideration of the denial based on the General Counsel's apparent reliance on an incorrectly calculated criminal history score.[3] ECF No. 736-8. The General Counsel, while acknowledging the miscalculation,

---

[2] The Bureau of Prisons should have filed a Motion on Davis's behalf. The Sentencing Commission encourages the Bureau of Prisons to file a Motion for Compassionate Release in these circumstances and explains that whether a defendant is a danger to the safety of any other person or to the community is best evaluated by the court. Commentary to § 1B1.13 states:

> The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

U.S.S.G. § 1B1.13, cmt. n.4.

[3] Due to clerical error, Davis's Pre-Sentence Report improperly calculated his criminal history category as IV instead of II. *See* ECF No. 722. On August 31, 2017, the Court granted Davis's Motion to Correct Judgment and Commitment Order but declined to adjust his sentence as it still fell within the Guidelines. *Id.*

3

reaffirmed his conclusion. *See* ECF No. 736-9. This decision constitutes a "final administrative decision." 28 C.F.R. § 571.63(b), (d).

Following the passage of the First Step Act, the Court is no longer hamstrung by the Bureau of Prisons' decision not to file a motion on Davis's behalf. Accordingly, the Court considers whether Davis meets the requirements for compassionate release.

III.

The Court finds that Davis meets the definition of "extraordinary and compelling reasons" as defined by U.S.S.G. § 1B1.13 Application Note 1.[4] As mentioned, he is 79 years old and reports serious deterioration of his physical health. He has undergone three prostate surgeries and has been diagnosed with benign localized hyperplasia of the prostate, among numerous other ailments.[5] *See* ECF No. 736-6. The Bureau of Prisons classifies him as medical level II, which requires chronic care. *See* ECF No. 763-3, p. 2. Davis has also served more than 10 years of his sentence; indeed, he has been incarcerated for over 19 years.[6]

Further, the Court is convinced that Davis is not a danger to the safety of any other person or to the community. *See* U.S.S.G. § 1B1.13(2). The crimes for which he is serving were non-violent offenses. And, notably, Davis has been incarcerated for close to twenty years without a single disciplinary infraction. *See* ECF No. 736-3. He will also be on supervised release for ten years during which time he will be closely monitored by the Probation Office. *See* ECF No. 392.

Despite his age and deteriorated physical condition, Davis has continuously held a work assignment while imprisoned, and has saved approximately $27,000 from prison wages. Upon

---

[4] *See* note 1, *supra*.
[5] He also reports suffering from adult-onset diabetes, hypertension (high blood pressure), coronary artery disease, atherosclerosis, glaucoma, low-vision in both eyes, an abdominal aortic aneurysm, hematuria (blood in the urine), seborrheic keratosis (skin growths), and chronic periodontist. *See* ECF No. 736.
[6] Davis has been incarcerated since his arrest on August 18, 2000. However, his sentence computation is calculated from September 24, 2001. *See* ECF No. 763-3, p. 1.

4

release, he intends to reside in Miami with his former wife, surrounded by a community of friends. *See* ECF No. 736-11 (letters from family and friends). Davis will also receive monthly funds from his pension with the Longshoremen Union, where he worked for 34 years, as well as from Social Security, and anticipates that his healthcare will be provided for either by the Longshoremen Union's health insurance policy or by Medicare. *See* ECF No. 736-10. These facts indicate that his chances of recidivism are low.

IV.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court must also take into account the factors outlined in 18 U.S.C. § 3553(a). Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" and (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

Davis was an integral part of the drug trafficking conspiracy. *See United States v. Davis*, 67 Fed Appx. 771, 776-77 (4th Cir. 2003). For years he personally transported large quantities of illegal drugs in specially outfitted vehicles into Maryland with the help of his sons and his sister. *Id.* at 774. Once in the state, Davis would provide the drugs to his co-defendants, including Ronald Dillard, who operated a large-scale drug trafficking organization in the Maryland area. *Id.* At the scheme's height, Davis made the journey to Maryland monthly. *Id.*

There is no question that these are serious offenses. For his involvement, Davis received the longest sentence among his fourteen co-defendants, the majority of whom pleaded guilty prior to trial.[7] The lead defendant, Ronald Dillard, pleaded guilty and received a sentence of 152 months

---

[7] The term of imprisonment of Davis's codefendants who pleaded guilty ranged from 30 to 210 months. After a jury found them guilty at trial, the Court sentenced Cleveland Copeland to 247 months, John Dillard to 480 months, and Davis to life incarceration. In his Motion, Davis calls attention to the government's filing of a sentencing enhancement notice under 21 U.S.C. § 851 in the weeks immediately preceding his trial. *See* ECF No. 297. He argues that the

in prison. *See* ECF No. 366. The term Davis has already served – 221 months – is more than enough to deter conduct similar to his. Indeed, Davis has now spent his "golden years" behind bars, and, while in prison, has demonstrated exemplary conduct.

Taking the foregoing into account, the Court concludes that Davis has served a term "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

IV.

The Court finds that Davis meets the criteria for compassionate release. He has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," and a reduction in his sentence is consistent with § 3553(a)'s factors. The Government concurs that Davis satisfies the criteria set forth in U.S.S.G. § 1B1.13 and does not oppose his compassionate release. Accordingly, Davis's Motion for Compassionate Release is **GRANTED**. This reduction in his sentence, however, will be stayed for fifteen (15) days in order to give the Bureau of Prisons time to arrange for his release.

A separate Order will **ISSUE**.

                                            /s/
                                    **PETER J. MESSITTE**
                                  **UNITED STATES DISTRICT JUDGE**

**March 5, 2020**

---

Government did this to induce him to plead guilty; a practice that has its critics. *See United States v. Hardnett*, 2019 WL 5445887 *1, n. 1 (E.D. Va. Oct. 24, 2019) (describing the use and criticism of § 851 enhancements). Moreover, Davis argues, and the Government does not dispute, that following the First Step Act's modification to 21 U.S.C. § 841(b)(1)(A), neither of Davis's prior convictions would now meet the threshold seriousness required for a § 851 notice. In sum, Davis argues, he would likely receive a lower sentence if he was sentenced today.